IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **Criminal No.**     3:11CR63-2 |
| *Plaintiff-Respondent,* | ) | **Civil Action No.**  3:13CV655 |
| | ) | |
| v. | ) | |
| | ) | |
| WINSTON SYLVESTER OLIVER, II, | ) | |
| | ) | |
| *Petitioner-Defendant.* | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO
VACATE, CORRECT, OR SET ASIDE SENTENCE UNDER 28 U.S.C. § 2255**

The United States of America by its counsel, Dana J. Boente, Acting United States

Attorney for the Eastern District of Virginia, and Roderick C. Young, Assistant United States

Attorney, respectfully files this Response to Petitioner Winston Oliver's Motion to Vacate,

Correct, or Set Aside Sentence pursuant to 28 U.S.C. § 2255.  For the reasons stated below, the

Petition should be denied.

**INTRODUCTION**

A.  **Factual Background:**

The evidence adduced at trial showed that between November 1, 2008, and November

15, 2008, Winston Sylvester Oliver, II (Oliver), began making plans to rob the Mr. Fuel Truck

Plaza of United States currency.  During that same month, Oliver learned from his wife, Danielle

Oliver, that Mr. Fuel employees kept large amounts of United States currency in their cash

register drawers.  Once Winston Oliver learned this, he became excited and his face "lit up."

Danielle Oliver testified that Winston Oliver immediately began visiting Mr. Fuel in an effort to survey the business. Oliver also questioned his wife about the location of surveillance cameras at the business. Oliver considered three areas near Mr. Fuel as staging locations for the robbery, but ultimately settled upon the parking lot of the Howard Johnson motel next door.

On May 8, 2010, Warren Brown went to Oliver's home in Chesterfield County. During the visit, Brown told Oliver that he (Brown) was having money problems. Oliver told Brown to get into his blue Ford Explorer, which Brown did. Telephone records show that the pair traveled from Richmond to Kelvin Johnson's residence, in the Woodford section of Caroline County, Virginia. While at Johnson's residence, Brown and Oliver spoke with Johnson about a pit bull puppy that Oliver was interested in purchasing.

At approximately 9:30 p.m. Brown and Oliver were parked at the Howard Johnson's motel, which is down the hill from Mr. Fuel. Oliver told Brown to rob the Mr. Fuel. Oliver pulled a loaded revolver from underneath the front seat of the vehicle and gave it to Brown. Oliver told Brown that there were no video cameras in the establishment, so Brown would not get caught. Brown initially said no, as he was concerned that he would end up on the "late breaking news." Oliver began complaining loudly about Brown's reluctance. Oliver told Brown that he used to work at the store and reiterated that there was no video surveillance in the establishment. Brown stated decided to go through with the armed robbery plan.

Brown exited the vehicle and walked toward the Mr. Fuel Truck Plaza. Brown entered Mr. Fuel through the "Tractor Trailer Parking" side of the building. Brown admitted that he was wearing eyeglasses when he entered the business. When Brown entered Mr. Fuel, he walked down an aisle where the chips and nabs are located. Brown picked up a pack of crackers while on this aisle. Brown approached the cash register and gave the pack of crackers to Sharon Jo

Conrad; Ms. Conrad scanned the item. Brown then pulled out the handgun given to him by Oliver and told Conrad to give him the money from the cash register.  Conrad tried to open the register, but could not.  Brown became agitated and fired the handgun, once or twice.

Theodore Edmond, a customer of the establishment, saw what was happening and was certain, based on Brown's demeanor, that Brown was going to kill Sharon Jo Conrad and the other clerk, Wanda Miss.  Edmond grabbed two beer bottles, approached Brown from the rear, and hit Brown in the head with the bottles.  Brown struggled with Edmond and during the struggle, Brown lost his eyeglasses in the store.  During the struggle, Brown shot Edmond four times as Brown fled the crime scene:  once in the shoulder, once in the right lateral thigh, once in the left interior groin area and once in the middle of the forehead.

As Brown ran out of the store, he fell in the parking lot.  During the fall, Brown dropped the pistol and some of the bullets fell out of the cylinder of the firearm.  Forensic analysis of one of the bullets revealed the DNA of Brandon Oliver, the brother Winston Oliver.  Brown ran down the hill to the Howard Johnson's parking lot and entered Oliver's vehicle.  Brown told Oliver that he (Brown) had not gotten any money and that he had just shot someone.  Oliver told Brown, "fuck it, you have stripes on your arm now."  Oliver drove out of the parking lot, exited on to the highway, and drove back to Richmond, Virginia.  During the drive, Oliver told Brown that it was "fucked up" that he (Brown) let someone get behind him and hit him in the head." Oliver told Brown that Brown had been careless and that Brown needed to "tighten-up." During the ride, Oliver assured Brown that there were not any video tape recording devices at Mr. Fuel and that the business only had monitors.  The following day, Winston Oliver sent Danielle Oliver a text message asking if she had "heard" about what happened at Mr. Fuel.

Within a week of the Mr. Fuel robbery, Oliver went to visit Tina Hancock, a long time drug user.  During that visit both were watching the news and video of the Mr. Fuel robbery was played on the broadcast.  While the video was playing, Oliver acknowledged that he was present during the robbery of Mr. Fuel.  Oliver continued by stating that he (Oliver) had told Brown to wear a mask during the robbery.  Oliver told Hancock that he was outside "as the driver." Hancock also heard Oliver on the phone with Brown.  During that conversation, Oliver indicated that he was making attempts to help Brown flee the Commonwealth of Virginia.  Oliver also advised Brown to stay silent as law enforcement did not know that he (Brown) had an accomplice.

### B. Procedural History:

On July 12, 2011, a federal grand jury returned a four-count, superseding  indictment charging Warren Harold Brown and Winston Sylvester Oliver with the following offenses: conspiracy to commit robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) (Count One), using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Two and Four); and, attempt to commit robbery affecting commerce, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Three).

Prior to trial, defendant Oliver filed a motion to sever his case from defendant Brown's case.  The Government filed a response in opposition to defendant Oliver's motion to sever.  On April 28, 2011, the district court entered an order denying defendant Oliver's motion to sever. Defendant Brown and defendant Oliver also filed motions requesting that the district court dismiss the second § 924(c) charge on double jeopardy grounds.  The Government filed a response in opposition to the defendants'' motion to dismiss the second § 924(c) charge.  At a hearing on the motion held on September 6, 2011, the district court denied both defendants'

motion to dismiss the second § 924(c) charge.  On August 26, 2011, defendant Oliver filed a second motion to sever his case from defendant Brown's case.  On August 30, 2012, the Government responded in opposition to the second motion to sever.  At a hearing on the motion held on September 6, 2011, the district court denied defendant Oliver's second motion to sever.

A jury trial commenced on September 12, 2011.  At the close of the Government's evidence, the defendant moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  The district court denied the motion.  On September 14, 2011, the jury found both defendants guilty as charged in the superseding indictment.  The district court ordered preparation of a presentence report for each defendant, and the matter was eventually continued to January 19, 2012, for sentencing.

A presentence report was filed with the district court for Oliver.  The probation officer assigned to the case determined that Oliver's offense level total was 28, and his criminal history category was VI, which yielded an advisory sentencing guideline range of 168-210 months' imprisonment for Counts One and Three.  With respect to Count Two, Oliver faced a mandatory minimum of 120 months' incarceration; on Count Four, defendant Oliver faced a mandatory minimum of 300 months' incarceration.  On January 19, 2012, the district court sentenced the defendant to approximately 52 years of imprisonment (210 months concurrent on counts 1 and 3; 120 months' imprisonment consecutive on Count 2, and 300 months' imprisonment consecutive on Count 4).

On January 25, 2012, Oliver filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit. (Docket Number 141).  On that same day, Christopher Collins, Esquire was appointed as Petitioner's appellate counsel.  (Docket Number 144).[1]

---

[1] The Docket Sheet is affixed to this response in Attachment A.

On March 8, 2013, the Fourth Circuit affirmed Oliver's conviction and dismissed the appeal of his sentence. *See United States v. Winston Oliver and Warren Brown*, 513 Fed.Appx 311, 2013 WL 856704(C.A.4(Va.)).[2] Thereafter, Oliver filed a writ of certiorari to the United States Supreme Court. On April 29, 2013, Oliver's petition was denied. On September 13, 2013, Oliver filed the instant Section 2255 petition.

## OLIVER'S CLAIMS FOR RELIEF

The Government has reviewed Oliver's petition and has attempted to summarize his Grounds for Relief as follows.

1. Ineffective assistance of counsel because counsel deprived Oliver of the right to testify.

2. Counsel was ineffective for failing to file notice of an alibi defense.

3. Ineffective assistance of counsel for counsel's failure to file raise the affirmative defense of entrapment during trial.

4. The trial court erred in admitting unreliable and hearsay statements during trial.

5. Statements by the prosecutor during closing argument were improper and in violation of the holding in *United States v. Bruton,* hence, Oliver's 5th and 14th Amendment rights were violated.

6. The Government improperly charged Oliver with two counts in violation of 18 U.S.C. § 924(c).

7. Petitioner's Due Process rights were violated because the Government allowed false testimony from an expert witness.

8. The Government failed to disclose *Brady* material for witness Kelvin Johnson.

---

2 This Opinion if affixed to this response in Attachment B

## COUNSEL'S RESPONSE

Attached hereto and incorporated by reference is the affidavit of Craig Sampson, Esquire, trial counsel for Winston Oliver.  In his affidavit, Mr. Sampson testifies as follows:[3]

On May 10, 2011, Sampson was appointed by the Court to represent Oliver on federal robbery and firearm charges.  (Sampson Affidavit ¶ 1).  On July 12, 2013, the United States filed a superseding indictment charging Oliver with conspiracy to commit robbery affecting commerce in violation of 18 U.S.C. § 1951(a) (Count One); using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Two and Four); and attempted robbery affecting commerce in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Three).  *Id.*

Oliver elected to proceed with a trial by jury in this matter.  (Sampson Affidavit ¶ 2).  On September 14, 2011, Oliver was found guilty as charged in the superseding indictment.  *Id.*  On January 19, 2012, this Court sentenced Oliver to 630 months imprisonment. *Id.*

Oliver alleges that Sampson was ineffective for failing to file a notice of alibi in his case. (Sampson Affidavit ¶ 3).  In preparing for trial, Sampson reviewed a statement that Oliver gave to the police after he was arrested.  *Id.*  In that statement, Oliver asserted that he was at a number of places around the time of the robbery attempt at the Mr. Fuel Truck Plaza, but in that statement he did not admit to robbing the establishment.  *Id.*  On August 12, 2011, Sampson met with Oliver at the Central Virginia Regional Jail.  *Id.*  During that meeting, Sampson and Oliver discussed whether or not Oliver would be asserting as an alibi that on May 8, 2010, Oliver drove alone to Fredericksburg, Virginia to look for his daughter.  *Id.*  During the meeting, Oliver told Sampson that there were no witnesses in a position to corroborate this trip.  *Id.*  Oliver told Sampson that he did not want Sampson to file a notice of alibi at that time, because he wanted to

3 Craig Sampson's affidavit is affixed to this response in Attachment C.

7

review other evidence in the case first. *Id.* Sampson counseled Oliver that the alibi notice was due in ten days (August 22, 2010), hence Sampson would need to know before that date whether or not he wished to assert this alibi. *Id.* Sampson and Oliver also discussed the pros and cons of asserting this alibi defense. *Id.* Sampson followed up on the conversation in writing in a letter dated August 15, 2011. *Id.* (See Exhibit 1, attached to the Sampson Affidavit, portions not relevant to alibi that may implicate attorney-client privilege have been redacted). *Id.* Oliver never instructed Sampson, orally or in writing, to file a notice of alibi. *Id.* The meeting on August 12, 2011 was not the only time that Oliver and Sampson discussed the possibility of filing a notice of alibi, but to the best of Sampson's recollection, it was the last time. *Id.*

Oliver alleges that Sampson prevented him from testifying at trial. (Sampson Affidavit ¶ 4). *Id.* Sampson met with Oliver on August 12, 2011, and discussed his right to testify during trial. *Id.* During the conversation, Sampson advised Oliver of the risks associated with testifying at trial. *Id.* Specifically, Sampson advised Oliver about the United States Sentencing Guidelines and how, if he were convicted, Oliver would likely receive an increase in his offense level for obstruction of justice if the Court believed he gave false or misleading testimony during trial. *Id.* Sampson then wrote a letter to Mr. Oliver dated August 15, 2011. *Id.* (See Exhibit 1, attached to the Sampson Affidavit, portions not relevant to defendant testimony that may implicate attorney-client privilege have been redacted). *Id.* Additionally, on the day of trial, Oliver was advised by the Court, on the record, as to his right to testify or not testify. *Id.* Specifically, the Court advised Oliver that he had the right to testify, but pursuant to the agreed discovery order filed in the case, Oliver would not be allowed to tell the jury he was somewhere other than Mr. Fuel, because Oliver had not given the Government notice of an alibi defense. *Id.* Ultimately,

Oliver decided for himself not to testify.  *Id.*  Oliver and Sampson discussed the possibility of Oliver testifying on more than one occasion during Sampson's representation of Oliver.  *Id.*

Oliver alleges that Sampson was ineffective for failing to raise the affirmative defense of entrapment during trial.  (Sampson Affidavit ¶ 5).  Oliver asserts that he was entrapped by the Government because law enforcement agents approached him and asked if he knew the location of the firearm used in the attempted robbery of Mr. Fuel.  *Id.*  Sampson did not assert an entrapment defense because Sampson did not believe that the argument was valid based upon the discovery materials he reviewed and the evidence presented at trial.  *Id.*  Upon information and belief, Oliver voluntarily engaged in the conversations with law enforcement about the location of the firearm used in the robbery.  *Id.*

## ARGUMENT

### A.  The Law Governing Ineffective Assistance Claims in General

In order to successfully raise a claim for collateral relief under 28 U.S.C. § 2255, a prisoner must establish that he has "cause" to raise this specific appeal, and that he has suffered "actual prejudice" as a result. *United States v. Frady*, 456 U.S. 152, 167 (1982).  Specifically, Oliver must illustrate cause—that counsel's performance was so seriously deficient that he was no longer "functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment,"—and prejudice—that counsel's "errors were so serious as to deprive the defendant of a fair trial," or a trial "whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

In order to establish the 'cause' prong under *Strickland*, Oliver must demonstrate that counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688.  This objective standard is a simple question of whether counsel's performance was reasonable under

the prevailing professional norms at the time of the trial when considering all of the circumstances surrounding the proceedings. *Id*. This analysis must be completed without the "distorting effects of hindsight;" and the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted); *see also United States v. Dyess,* 478 F.3d 224, 237 (4th Cir. 2007) ("In addressing ineffective assistance of counsel challenges, this court presumes that the defendant's counsel rendered objectively effective performance.").

In order to establish the second, 'prejudice' prong under *Strickland*, Oliver must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (stating that incorrect advise or trial effort must be prejudicial to warrant relief); *Horne v. Peyton*, 356 F.2d 631, 637 (4th Cir. 1966) (holding that the fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). There is no presumption of prejudice, except when 1) there was an actual or constructive denial of the assistance of counsel altogether, 2) where there is government interference with counsel's assistance, and 3) where counsel "is burdened by an actual conflict of interest." *Strickland,* 466 U.S. at 692.

The right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction. *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). In order to establish that appellate counsel was ineffective for failing to pursue a claim on direct appeal, Petitioner

must demonstrate that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668 (1984).

The Fourth Circuit has held that in applying this test to claims of ineffective assistance of counsel on appeal, reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes,* 463 U.S. 745, 752 (1983). In fact, Petitioner must demonstrate that "counsel was objectively unreasonable" in failing to file a brief addressing any nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure ..., he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259 (2000).[4]

### B. 2255 Claims and Procedural Default

Failure to raise a claim at trial or on direct appeal generally forecloses collateral review of the same. *United States v. Frady*, 456 U.S. 152, 165 (1982); *see also Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976); *Sunal v. Large*, 332 U.S. 174 (1947). This principle applies to non-constitutional and constitutional claims alike. Indeed, "[n]o procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal, as well as, civil cases by the

---

4 In his petition, Oliver does not specifically raise any ineffectiveness claims against his appellate attorney, but does note in several places throughout the petition, that appellate counsel failed to raise a particular issue because appellate counsel, Chris Collins communicated that he was only going to raise the best issues for appeal. If the defendant means to argue that his lawyers did not raise every claim that he wanted advanced, Courts have held that a lawyer does not have a duty to assert every non-frivolous claim urged by his client for the reasons cited above.

failure to make timely assertion of the right." *Yakus v. United States*, 321 U.S. 414, 444 (1944) (cited in *United States v. Cotton*, -- U.S. --, 122 S. Ct. 1781, 1787 (2002)). A defendant can overcome the failure to raise a claim at trial or on direct appeal only by demonstrating either (a) cause and prejudice, *see, e.g.*, *United States v. Landrum*, 93 F.3d 122, 124-25 (4th Cir.1996), or (b) actual innocence, *see Bousley v. United States*, 523 U.S. 538, 559 (1998).

In the instant petition, Oliver raises claims that are both barred, and not barred, by the doctrine of procedural default. With the aforementioned standards in mind, the United States will address all of Oliver's ineffective assistance claims. Viewing the facts of the case, in light of the legal standards referenced above, it is clear that Oliver is not entitled to any relief.

### C. Oliver's Claims (Not Barred By Procedural Default)

#### 1. Ineffective assistance of counsel because counsel deprived Oliver of the right to testify.

Oliver argues that counsel was ineffective because Oliver was deprived, by counsel, of the right to testify during trial. For the reasons that follow, this claim is without merit and must be dismissed.

The Fifth Amendment guarantees criminal defendants an unqualified right to choose whether to testify at trial and at sentencing. *Harris v. New York*, 401 U.S. 222, 225 (1971). By choosing to testify, the defendant waives the right to refuse to answer questions during cross-examination that are reasonably related to matters properly within the scope of direct testimony. *Mitchell v. U.S.* 526 U.S. 314, 321 (1999).

During the trial on this matter, and at the close of the Government's evidence, the Court addressed Mr. Sampson and inquired whether Oliver desired to put on any evidence. (Trial Transcript, P. 398).5 Mr. Sampson replied that it was his understanding that Oliver did not

---

5 This portion of the transcript is affixed to this response in Attachment D.

intend to testify, but Sampson asked the Court to inquire of Mr. Oliver independently. (Trial Transcript, P. 398). The Court advised Mr. Oliver that he (Oliver) had an absolute right to remain silent and not take the stand, but that Oliver also had the right to take the stand and testify. (Trial Transcript, P. 398-99). Finally the Court advised that it was Oliver's decision whether or not to take the stand to testify. (Trial Transcript, P. 399).

Oliver responded that he, in fact, wanted to testify. (Trial Transcript, P. 399). The undersigned requested that the Court then advise Mr. Oliver that, pursuant to the discovery order in the case, Oliver had not provided the United States with notice of an alibi, hence the defendant would not be able to testify that he was anywhere other than the Mr. Fuel Truck Plaza or the Howard Johnson's parking lot on the night of the attempted robbery of Mr. Fuel. (Trial Transcript, P. 400). The Court informed Oliver that he could not advance an alibi. (Trial Transcript, P. 400). Thereafter, when the Court asked Mr. Sampson if he had any evidence, Mr. Sampson indicated that he did not. (Trial Transcript, P. 405).

In his affidavit, Sampson informs that he met with Oliver on August 12, 2011, and discussed Oliver's right to testify during trial. (Sampson Affidavit ¶ 4). During the conversation, Sampson advised Oliver of the risks associated with testifying at trial. *Id.* Specifically, Sampson advised Oliver about the United States Sentencing Guidelines and how, if he were convicted, Oliver would likely receive an increase in his offense level for obstruction of justice if the Court believed Oliver gave false or misleading testimony during trial. *Id.* Sampson then wrote a letter to Mr. Oliver dated August 15, 2011, memorializing their conversation. *Id.* (See Exhibit 1, attached to the Sampson Affidavit, portions not relevant to defendant testimony that may implicate attorney-client privilege have been redacted). *Id.* Additionally, on the day of trial Oliver was advised by the Court, on the record, as to his right to testify or not testify. *Id.*

Ultimately, Oliver decided for himself not to testify.  *Id.*  Oliver and Sampson discussed the possibility of Oliver testifying on more than one occasion during Sampson's representation of Oliver.  *Id.*

Therefore, a review of the transcript and trial counsel's affidavit proves that Oliver was not prevented from testifying; rather, Oliver chose not to testify during his trial.[6]  Hence, Oliver suffered no prejudice so this claim is without merit and should be denied.

### 2.   Counsel was ineffective for failing to file notice of an alibi defense.

Oliver alleges that Sampson was ineffective for failing to file notice of an alibi prior to trial.  For the reasons that follow, this claim is without merit and must be dismissed.

On March 21, 2011, the Court entered an Agreed Discovery Order between the government and the defendant.[7]  The Agreed Discovery Order governed the disclosure of a number of items prior to trial.  On page 5, Section V of the Order (Notice of Alibi), the Court mandates that the defendant provide the government with alibi notice 20 days prior to trial.[8]  Prior to trial, defendant Oliver did not supply the Government with notice of an alibi.

In his affidavit, Sampson informs that in preparing for trial, Sampson reviewed a statement that Oliver gave to the police after Oliver was arrested.  (Sampson Affidavit ¶ 3).  In that statement, Oliver asserted that he was at a number of places around the time of the robbery attempt at the Mr. Fuel Truck Plaza, but in that statement Oliver did not admit to attempting to

---

6 Additionally, the Court also advised Oliver of the consequences of providing false testimony and the fact that all of the *Bruton* rulings made prior to trial could possibly be undone and "fall like a house of cards" if Oliver chose to testify.  (Trial Transcript, P. 401-402)

7 A copy of the Agreed Discovery Order is affixed to this response in Attachment E.

8 The language in this section of the Order reads as follows: "It is further ORDERED pursuant to Fed. R. CRIM. P. 12.1 that, no later than 20 calendar days before trial, the defendant, by and through counsel, shall comply with Rule 12.1(a) if the defendant intends to offer a defense of alibi, and further that the defendant and the government shall comply with Rules 12.1(b) and (c) within the time period set out in those rules except upon motion of the parties for good cause shown."

rob the establishment.  *Id.*  On August 12, 2011, Sampson met with Oliver at the Central Virginia

Regional Jail.  *Id.*  During that meeting, Sampson and Oliver discussed whether or not Oliver

would be asserting, as an alibi, that on May 8, 2010, Oliver drove alone to Fredericksburg,

Virginia to look for his daughter.  *Id.*  During the meeting, Oliver told Sampson that there were

no witnesses in a position to corroborate this trip.  *Id.*  Oliver told Sampson that he did not want

Sampson to file a notice of alibi at that time, because he (Oliver) wanted to review other

evidence in the case first.  *Id.*  Sampson counseled Oliver that the alibi notice was due in ten days

(August 22, 2010), hence Sampson would need to know before that date whether or not Oliver

wished to assert this alibi.  *Id.*  During the meeting, Sampson and Oliver also discussed the pros

and cons of asserting this alibi defense.  Sampson memorialized the conversation, by a letter

dated August 15, 2011.  *Id.* (See Exhibit 1, attached to the Sampson Affidavit, portions not

relevant to alibi that may implicate attorney-client privilege have been redacted).  *Id.*  Oliver

never instructed Sampson, orally or in writing, to file a notice of alibi. *Id.*  The meeting on

August 12, 2011 was not the only time that Oliver and Sampson discussed the possibility of

filing a notice of alibi, but to the best of Sampson's recollection, it was the last time.  *Id.*

Since Oliver never requested that Sampson notify the Government of the desire to

provide the Government with alibi notice, this claim is without merit and should be dismissed.

### 3. Ineffective assistance of counsel for counsel's failure to file raise the affirmative defense of entrapment during trial

Oliver's claim, that trial counsel was ineffective for failure to file or raise the affirmative

defense of entrapment is without merit.  Oliver argues that he was entrapped by Government

agents who spoke with him, prior to his arrest, about the location of the firearm used in the attempted robbery of Mr. Fuel.[9]

A valid entrapment defensed has two related elements:  government inducement of the crime and lack of predisposition on the part of the defendant to engage in criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63 (1988); *Accord United States v. Hackley*, 662F.3d 671, 681-82 (4th Cir. 2011); *United States v. Ramos*, 462 F.3d 329, 334 (4th Cir. 2006). Entrapment is an affirmative defense that places on the defendant the initial burden of presenting evidence that the government induced the defendant to commit the charged offense.  *Jacobsen v. United States*, 503 U.S. 540, 549 (1992); *United States v. Singh*, 54 F.3d 1182, 1189 (4th Cir. 1995);  If the defendant carries his initial burden of showing government inducement, the burden shifts to the government to prove, beyond a reasonable doubt, that the defendant was predisposed to commit the crime.  *United States v. Blevins*, 960 F.2d 1252, 1257-58 (4th Cir. 1992); *United States v. Akinseye*, 802 F.2d 740, 743 (4th Cir. 1986).

In his affidavit, Sampson informs that he did not assert an entrapment defense because Sampson did not believe that the argument was valid based upon the discovery materials he reviewed and the evidence presented at trial.  (Sampson Affidavit ¶ 3).  Upon information and belief, Oliver voluntarily engaged in the conversations with law enforcement about the location of the firearm used in the robbery.  *Id.*

---

9 Oliver argues that he was entrapped by government agents when interviewed about the gun used in the attempted robbery of Mr. Fuel.  Typically, as discussed in this section, entrapment defenses usually relate to *crimes* committed, not *statements* made to law enforcement officers.  Statements made by a defendant to law enforcement officers are usually attacked under a voluntariness claim.  Specifically, whether or not a statement made by the defendant to law enforcement was involuntary under the Fifth Amendment, the Due Process clause and *Miranda v. Arizona*, 384 U.S. 436 (1966).  Since Oliver argues this claim under a theory of entrapment, and since Sampson addressed this as an entrapment claim in his affidavit, the Government will respond to this claim under an entrapment theory as well.

An entrapment theory is misplaced under the aforementioned facts.  Oliver voluntarily engaged in conversations with the Government about the location of the firearm, but Oliver never admitted to knowledge of the location of the firearm used in the crime.  Finally, law enforcement was never able to recover the firearm used in the crime. For all of these reasons, this claim is without merit and must be dismissed.

### D.  Oliver's Claims (Barred By Procedural Default)

Each of the following grounds presented by Oliver is based on evidence or a legal theory that was available to Oliver on direct appeal and is thus barred by procedural default.  *See Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir. 1976); *Frady*, 456 U.S. at 165.  Under established precedent, such claims may not support a collateral attack upon a facially valid conviction.

All of the arguments raised by Oliver in this section we were available Oliver on appeal, but were not raised, or raised and rejected by the Court of Appeals.  Oliver does not make any credible claim that any of his arguments are based on newly discovered facts or evidence.  In addition, Oliver does not provide any evidence of actual innocence.   Due to petitioner's procedural default, none of his arguments may be the subject of collateral attack.  Hence, each argument is procedurally barred.

### 1.   The trial court erred in admitting unreliable hearsay statements during trial.

Oliver argues that the district court judge admitted, during trial, unreliable hearsay statements.  This claim, was not raised on appeal and is therefore subject to the doctrine of procedural default for the reasons outlined above.  Thus, this claim is not cognizable in this 2255 petition.  Additionally, statements offered as "background" rather than for the truth of the matter asserted are not hearsay.  *Beech Aircraft Corp v. Rainey*, 488 U.S. 153, 1723 n.18 (1988).

In this claim, Oliver argues that the trial court erred by allowing into evidence testimony from a law enforcement officer about the fact that an officer received a crime-stoppers tip that referenced the name Winston Oliver and the nickname "Fleet," in relation to the attempted robbery of Mr. Fuel.  Based on getting these names, the officer was able to obtain a picture of Winston Oliver.  Oliver's attorney objected to the introduction of this picture into evidence during trial.  After a proffer from the government, the district court judge allowed the testimony into evidence, not for the truth of the matter asserted, but to explain why the officer took the actions that he took.

Hence, this claim is barred by the doctrine of procedural default as it could have been raised on appeal.  But even if it were not procedurally barred, the claim still fails because the "crime-stoppers" information was not admitted into evidence for the truth of the matter asserted.  Rather, it was admitted to explain to the jury why the officer took the steps that he did, which led to the officer obtaining a picture of Winston Oliver.  For these reasons, this claim is without merit and must be denied.

### 2. Statements by the prosecutor during closing argument were improper and in violation of the holding in *Bruton v. United States.*

Oliver argues that the government, during closing argument, made improper statements, in violation of the holding in *Bruton v. United States*, 391 U.S. 123 (1968).  This claim was not raised on appeal and is subject to the doctrine of procedural default for the reasons outlined above. Thus, this argument is not cognizable in this 2255 petition.

Additionally, the Confrontation Clause of the Sixth Amendment is violated and severance is required when a non-testifying co-defendant's confession naming the defendant as a participant in the crime is admitted, even if the jury is instructed to consider the confession only against the confessing co-defendant.  *Id*. at 135-36.  Even if the moving defendant's name is

redacted, severance is required "if . . . it is clear that a particular defendant is implicated . . ." *United States v. Akinkoye*, 185 F3d. 192, 197 (4th Cir. 1999); *Accord United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002); *United States v. Locklear*, 24 F.3d 641 (4th Cir. 1994). However, there is no Sixth Amendment violation, and severance is not required, unless there are "facially incriminating statements," not merely statements which only become incriminating when linked to other evidence. *Richardson v. Marsh*, 481 U.S. 200, 208-209 (1987), *United States v. Locklear*, 24 F.3d 641 (4th Cir. 1994), and *United States v. Crockett*, 813 F.2d 1310, 1314 (4th Cir. 1987).

In the instant case, Oliver's co-defendant, Warren Brown confessed his role, and Oliver's role, in the attempted robbery of the Mr. Fuel truck plaza. The government advised counsel for Brown and Oliver that the government intended to introduce into evidence, Brown's confession while redacting the identity of Oliver. The government proposed several alternative pronouns to replace Oliver's name. Ultimately, the Court, the government, and the defendant settled upon the pronoun "the driver", as a replacement for Oliver's name.

During closing argument, the Government argued that Brown was the individual who entered Mr. Fuel with the intent to rob the establishment of U.S. currency and that Brown was assisted by a person who acted as the [getaway] "driver" in the crime. The Government further argued that, given the totality of the evidence presented during trial, the Government proved that the "driver" was in fact Winston Oliver. Hence, there was no Sixth Amendment violation during closing argument, because the incriminating evidence that linked Oliver to the crime, was not based on Brown's statement alone, rather, it was Brown's statement when linked to other incriminating evidence.

As stated, Oliver failed to raise this particular issue, vis-a-vis the Government's closing argument, on appeal so this claim is barred based on the doctrine of procedural default. Additionally, even if this claim were not procedurally barred, it would still fail because the redaction of Brown's statement was proper and there was plenty of evidence to link Oliver to the instant crime. For all of these reasons, this claim is without merit and must be dismissed.

### 3. The Government improperly charged Oliver with two counts in violation of 18 U.S.C. § 924(c).

Oliver argues that the government, improperly charged him with violating two counts of 18 U.S.C. § 924(c). This claim is subject to the doctrine of procedural default for the reasons outlined above and thus is not cognizable in this 2255 petition. In his 2255 petition, Oliver substitutes "rule of lenity" for double jeopardy, but ultimately he attempts to relitigate a claim that was decided pretrial by the District Court, decided by the jury, and affirmed by the Fourth Circuit on appeal; and that is: that the Government should not have been allowed to charge Oliver with two violations of § 924(c). Oliver argues that Government used a single predicate to charge multiple § 924(c) offenses. Oliver argues that while being charged with aiding and abetting the § 924(c) offense, Government should have proved that Oliver knowingly and actively participated in the crime of violence.

Section 2255 does not generally require a federal court to second-guess itself. Accordingly, where a claim is actually decided by the trial court or on direct review, it cannot be relitigated under Section 2255 absent new facts, new evidence, or a favorable change in the governing substantive law. *See Boeckenhaupt v. United States*, 537 F.2d 1182 (4th Cir. 1976); *reaffirmed in United States v. Roane*, 378 F.3d 382, 398 n.7 (4th Cir. 2004). S*ee also United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997); *Argencourt v. United States*, 78 F.3d 14, 16 n.1 (1st Cir. 1996); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Cabrera v.*

*United States*, 972 F.2d 23, 25 (2d Cir. 1992); *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (*per curiam*) (citing cases).

Additionally, Oliver's reliance of the "rule" of lenity is misplaced. Under the rule of lenity, ambiguous statutes are construed against the government and in favor of the defendant. *See United States v. Santos*, 553 U.S. 507, 513-14 (2008); *Burgess v. United States*, 553 U.S. 124, 135-36 (2008) (emphasizing that the rule of lenity only applies where language remains ambiguous); *Pasquantino v. United States*, 544 U.S. 349, 383 (2005); *Johnson v. United States*, 529 U.S. 223, 239 (1993); *Chapman v. United States*, 500 U.S. 453, 463 (1991). Oliver does not argue that there is anything ambiguous about the § 924(c) statute, hence reliance on a rule of lenity theory is of no moment and cannot be a basis to sustain this claim.

Further, Oliver argues that the Government should not have been allowed to charge him with two § 924(c) Counts. Oliver's assertion is incorrect. Both the Fourth Circuit's and the Supreme Court's cases make clear that when a defendant is convicted of two § 924(c) counts and those two counts satisfy the Double Jeopardy Clause, both counts must stand, and successive punishment must be imposed. "As long as the imposition of multiple § 924(c) sentences does not violate the Double Jeopardy Clause, we will uphold those sentences in accordance with the plain language of the statute." *United States v. Khan*, 461 F.3d 477, 493 (4th Cir. 2006). *See also Deal v. United States*, 508 U.S. 129, 132 (1993) (successive § 924(c) violations may be charged in same indictment and need not depend on whether there was a preexisting judgment of conviction for the first conviction); *United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) ("the statute mandates that each sentence for convictions under § 924(c) must be imposed consecutively").

The Fourth Circuit's cases likewise make clear that there is no prohibition on obtaining multiple § 924(c) convictions from one criminal episode.  In *United States v. Higgs*, 353 F.3d 281, 333 (4th Cir. 2003), for example, the Fourth Circuit rejected the defendant's argument that he could not be subject to multiple § 924(c) convictions "because all three counts arose from one criminal episode in which a single gunman fired multiple shots."  *See also United States v. Lighty*, 616 F.3d 321, 370-71 (4th Cir. 2010) (rejecting defendant's argument that multiple § 924(c) convictions could not be imposed because "all three counts arose from 'one criminal occurrence'"); *United States v. Cruz*, 439 F. App'x 209, 212 (4th Cir. 2011) (rejecting defendants' arguments that they could not receive multiple § 924(c) convictions for firing shots at three victims in one episode), *cert. denied*, 132 S. Ct. 1094 (2012).

The critical question, as *Khan* explains, is whether the multiple § 924(c) convictions violate the Double Jeopardy Clause.  The test for determining when a defendant may be convicted of two offenses is the longstanding standard in *Blockburger v. United States*, 284 U.S. 299 (1932).  Under *Blockburger*, a defendant may be convicted of two crimes and punished separately for those crimes when "each [criminal statute defining the two crimes] requires proof of a fact which the other does not."  *Khan*, 461 F.3d at 494 n. 10 (quoting *Blockburger*, 284 U.S. at 304).

Under the Fourth Circuit's cases, § 924(c) convictions may be distinguished under *Blockburger* in two different ways.  The separate § 924(c) convictions may be shown to involve separate firearm uses *or* the § 924(c) convictions may be shown to involve separate predicate crimes of violence or drug-trafficking offenses.  In *Khan*, a dissenting judge argued that the government failed to show in that case that separate firearm uses supported the multiple § 924(c) convictions.  But the majority responded that "Khan was convicted of *four* predicate crimes of

violence, not a 'single predicate offense,' and we therefore need not count 'uses.'" *Khan*, 461 F.3d at 493 n. 9.  And in applying the multiple-predicate standard, the majority in *Khan* rejected a "single 'episode'" restriction on multiple § 924(c) convictions where there were separate predicate offenses.  *Id*.  *Khan* explained that "in this circuit the four crime-of-violence convictions are considered separate predicate offenses provided that they do not violate the Double Jeopardy Clause."  *Id*.  Thus, "[a]s long as the underlying crimes are not identical under the *Blockburger* analysis, then consecutive §924(c) sentences are permissible."  *Id*. (quoting *United States v. Luskin*, 926 F.2d 372, 376 (4th Cir. 1991)).

As *Khan* indicates, the Fourth Circuit has also held that "multiple, consecutive sentences under § 924(c) are appropriate whenever there have been multiple, separate acts of firearm use or carriage, even when all of those acts relate to a single predicate offense."  *Lighty*, 616 F.3d at 371 (citing *United States v. Camps*, 32 F.3d 102 (4th Cir. 1994)).  This rule goes beyond the holding noted above that multiple § 924(c) convictions may arise from a single occurrence and adds that multiple § 924(c) convictions may be based on a single predicate crime of violence or drug-trafficking offense when there are multiple firearm uses.

Notably, in this case, the United States satisfied *both* standards—the defendants' two § 924(c) convictions had separate predicate offenses *and* relied on separate uses.  Thus, the United States took a conservative and restrained approach in charging this case.

Take Brown's § 924(c) counts.  His § 924(c) charge in Count Two relied for its predicate offense on Count One, conspiracy to commit robbery.  Meanwhile, his § 924(c) charge in Count Four relied for its predicate offense on Count Three, attempt to commit robbery.  The two § 924(c) counts therefore are based on separate predicate offenses.  And there is no doubt that a conspiracy to commit a crime of violence (a) counts as a crime of violence, (b) may be used as a

predicate offense for § 924(c), and (c) is distinct under the *Blockburger* test from the substantive crime that is the object of the conspiracy.  As the Fourth Circuit recently reiterated, "[w]e have recognized that a conspiracy can itself be 'a separate crime of violence providing its own predicate for § 924(c)(1) liability.'" *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (quoting *United States v. Phan*, 121 F.3d 149, 152-53 (4th Cir. 1997)).  *See also United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) (a substantive crime of violence is distinct under *Blockburger* from conspiracy to commit the substantive crime because "the former requires proof the substantive crime was actually committed while the latter does not, and the latter requires proof of an agreement while the former does not"); *United States v. Yearwood*, 518 F.3d 220, 223 (4th Cir. 2008) (same) (citing *United States v. Felix*, 503 U.S. 378, 389-92 (1992)).

Brown's two § 924(c) counts also relied on separate firearm uses.  The § 924(c) charged in Count Two relies on Overt Act 8, the shooting when the cashiers did not immediately produce money from the registers.  Meanwhile, the § 924(c) charged in Count Four relies on Overt Act 9, the shooting of the customer, T.E., who came to the aid of the cashiers.  Under Fourth Circuit law, a defendant who murders one victim does not get a free pass under § 924(c) to kill as many bystanders as the defendant wishes without incurring additional criminal liability under § 924(c).  Shooting at the cashiers and shooting Theodore Edmond constitute separate § 924(c) violations.

The analysis is the same for Oliver.  Although he was not inside the Mr. Fuel store when Brown pulled the trigger on the gun, Oliver easily meets the standard for aiding and abetting liability and *Pinkerton* liability, and the Fourth Circuit has squarely held that a defendant may be liable under § 924(c) based on both aiding and abetting and on *Pinkerton* liability.  *See United States v. Ashley*, 606 F.3d 135, 141-44 (4th Cir. 2010).

A person found guilty of aiding and abetting "is punishable 'as a principal' if he 'aids, abets, counsels, commands, induces or procures' the commission of a federal offense or 'willfully causes' another to do an act that would be criminal if he performed it himself." *Id.* at 143 (quoting 18 U.S.C. § 2). *See also United States v. Akinkoye*, 185 F.3d 192, 201 (4th Cir. 1999) ("Aiders and abettors are liable to the same extent as the principal."). Alternatively, under the *Pinkerton* doctrine, a person is liable "for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *Ashley*, 606 F.3d at 142-43. *Pinkerton* liability further "provides that a person can commit an offense not only by engaging in the forbidden conduct himself but also by participating in a conspiracy that leads a confederate to engage in that conduct." *Id.* "In other words, *Pinkerton* liability, like aiding and abetting liability, rests on notions of agency and causation." *Id.*

Because Oliver was instrumental in devising the robbery, provided Brown with a loaded firearm used in the robbery, and served as the getaway driver, it was reasonably foreseeable to Oliver that the loaded firearm that he provided to Brown could be used during the robbery, and Oliver should therefore have been treated as a principal in the two separate uses of the firearm by Brown.

Therefore, this claim is procedurally barred because Oliver did raise it on appeal and his arguments were rejected by the Fourth Circuit.

### 4. Petitioner's Due Process rights were violated because the Government allowed false testimony from an expert witness.

Oliver argues that the government allowed false testimony from "expert witness" Detective Timmy Walker during trial. In addition to the fact that the Government did not call Detective Walker as an expert witness, this claim is also subject to the doctrine of procedural default for the reasons outlined above and thus, is not cognizable in this 2255 petition.

25

Detective Walker was not called by the Government during trial as an expert witness, but as a fact witness. Walker testified that in February 2009, he enlisted Oliver as an informant for the Richmond Police Department (RPD). (Trial Transcript, P. 202-03). Between February and October of 2009, Oliver was inactive as an informant. (Trial Transcript, P. 205). Thereafter, Oliver contacted Walker and was able to conduct several controlled buys for RPD. (Trial Transcript, P. 205-06). Walker also testified that between May 10 and May 20, 2010, Oliver did not make contact with him (Walker) in an effort to give Walker information about the attempted robbery of Mr. Fuel. (Trial Transcript, P. 208). This is the substance of Detective Walker's testimony, hence Walker did not offer an expert opinion during trial.

Oliver did not raise this argument on appeal, therefore it is barred pursuant to the doctrine of procedural default. Even if it were not procedurally defaulted, Oliver's claim is still without merit because Detective Walker was not offered as an expert witness by the Government.[10]

### 5. The Government failed to disclose *Brady* material for witness Kelvin Johnson.

Oliver argues that the government failed to disclose *Brady* material for witness Kelvin Johnson, specifically, regarding state court charges that were pending against Johnson in Caroline County, Virginia at the time of Oliver's trial in Federal Court. This claim is subject to the doctrine of procedural default for the reasons outlined above and thus is not cognizable in this 2255 petition. Additionally, this claim is factually incorrect as the Government provided Oliver with information regarding Johnson's pending charges in Caroline County pursuant to the Court's Discovery Order.

---

10 The Testimony of Detective Walker is affixed to this response in Attachment F.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the prosecution." *Accord United States v. Agurs*, 427 U.S. 97, 106-07 (1976). *Giglio* material, which is a subset within *Brady* material, requires the production of evidence, by the prosecution, which has a tendency to impeach a government's witness. Examples of *Giglio* material include plea agreements and a witness's prior criminal history. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Chavis v. North Carolina*, 637 F.2d 213, 225 (4th Cir. 1980); and *United States v. Sutton*, 542 F.2d 1239, 1243 (4th Cir. 1976). The material that Oliver complains of in the instant petition is more properly characterized as *Giglio* material.

The Government learned, prior to the instant trial, that Kelvin Johnson was facing narcotics charges in Caroline County, Virginia. Mr. Johnson requested that the undersigned, inform the Caroline County Commonwealth's Attorney (Anthony Spencer) of Mr. Johnson's cooperation in the Brown/Oliver prosecution. The undersigned agreed to inform Tony Spencer of the foregoing. However, the United States also informed Mr. Johnson that any consideration for Mr. Johnson on his Caroline County charges, based on his cooperation in the federal case, would have to be determined by the Caroline County Commonwealth's Attorney.

After that conversation with Mr. Johnson, the United States memorialized the same in an email to Anthony Spencer on August 26, 2011.[11] The Government also informed Oliver of the aforementioned information because the Government produced the email, along with other *Jencks* and *Giglio* material, to counsel for Oliver prior to trial in accordance with the Court's discovery order.

---

11 A copy of the email is affixed to this response in Attachment G.

Finally, during trial, counsel for Oliver used the impeachment information, provided by the Government, to cross-examine Mr. Johnson. (Trial Transcript, P 332-33). On cross-examination Sampson questioned Johnson about his pending Caroline County charges and the possibility of receiving a benefit from the Caroline County Commonwealth's Attorney in exchange for testifying in Federal Court.[12]  *Id.*

Therefore, this claim is procedurally barred because Oliver did not raise it on appeal. Even if not procedurally barred, the claim still fails because the impeachment evidence was provided to Oliver prior to trial, and was used by his attorney to cross-examine Mr. Johnson.

## CONCLUSION

For the foregoing reasons, Oliver's claims are without merit and should be denied.

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By:   _____/s/_____
        Roderick C. Young
        Assistant United States Attorney
        Virginia Bar Number 39679
        United States Attorney's Office
        Eastern District of Virginia
        Richmond, Virginia 23219
        804-819-5400
        804-771-2316 (f)
        roderick.c.young@usdoj.gov

---

12 The testimony of Kelvin Johnson is affixed to this response in Attachment H.

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December 2013, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF filing system.  I will also mail a copy of the

foregoing via first class mail to:

> Winston Sylvester Oliver
> Inmate Number: 77803-083
> FMC Lexington
> Federal Medical Center
> P.O. Box 14500
> Lexington, KY 40512

> _____/s/_____
> Roderick C. Young
> Assistant United States Attorney
> Virginia Bar Number 39679
> United States Attorney's Office
> Eastern District of Virginia
> Richmond, Virginia 23219
> 804-819-5400
> 804-771-2316 (f)
> roderick.c.young@usdoj.gov