UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WINSTON SYLVESTER OLIVER, II,<br><br>Petitioner. | Criminal Action No. 3:11-CR-63-02<br>Civil Action No. 3:13-CV-655 |

### MEMORANDUM OPINION

THIS MATTER is before the Court on *pro se* Petitioner Winston Sylvester Oliver II's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 165). For the reasons set forth below, the § 2255 Motion is DENIED.

### I. BACKGROUND

#### a. *Factual Background*

Between November 1, 2008 and November 15, 2008, Winston Sylvester Oliver, II ("Oliver") began making plans to rob the Mr. Fuel Truck Plaza ("Mr. Fuel") in Ruther Glen, Virginia of United States currency. Oliver learned from his wife, Danielle Oliver, that Mr. Fuel employees kept large amounts of money in the cash register drawers. Once Oliver learned this, he became excited and his face "lit up." Oliver began visiting Mr. Fuel in an effort to survey the business and he also questioned his wife about the location of surveillance cameras in the business.

On May 8, 2010, Warren Harold Brown ("Brown") went to Oliver's home in Chesterfield County. During the visit, Brown told Oliver that he was having money problems. Oliver told Brown to get into Oliver's blue Ford Explorer, which Brown did. At approximately 9:30 p.m., Brown and Oliver were parked at the Howard Johnson's motel, which is down the hill from Mr.

Fuel. Oliver told Brown to rob Mr. Fuel. Oliver pulled a loaded revolver from underneath the front seat of the vehicle and gave it to Brown. Oliver told Brown there were no video cameras in the establishment so Brown would not get caught. Brown was initially reluctant, but eventually decided to go through with the robbery.

Brown entered Mr. Fuel and picked up a pack of crackers. He proceeded to the cash register and gave the pack of crackers to Sharon Jo Conrad ("Conrad"). After Conrad scanned the item, Brown pulled out the handgun and told Conrad to give him the money from the cash register. Conrad tried to open the register, but could not. Brown became agitated and fired the handgun, once or twice.

Theodore Edmond ("Edmond"), a customer in Mr. Fuel, saw what was happening and believed that Brown was going to kill Conrad and the other store clerk, Wanda Miss. Edmond grabbed two beer bottles, approached Brown from the rear, and hit Brown in the head with the bottles. In the ensuing struggle between Brown and Edmond, Brown shot Edmond four times as Brown fled the crime scene. As Brown ran out of the store, he fell in the parking lot and dropped the pistol and some of the bullets fell out of the cylinder of the firearm. Brown then ran back to the car where Oliver was waiting. Oliver then drove the pair back to Richmond, Virginia.

The following day, Oliver sent his wife a text message asking if she had "heard" about what happened at Mr. Fuel. Within a week of the robbery, Oliver went to visit Tina Hancock ("Hancock"). During that visit both were watching the news, and video of the Mr. Fuel robbery was played on the broadcast. While the video was playing, Oliver acknowledged that he was present during the robbery of Mr. Fuel. Oliver told Hancock that he was outside "as the driver." Hancock also heard Oliver on the phone with Brown when Oliver indicated that he was making attempts to help Brown flee the Commonwealth of Virginia. Oliver also advised Brown to stay silent as law enforcement did not know that he (Brown) had an accomplice.

### b. *Procedural Background*

On July 12, 2011, a federal grand jury returned a four-count, superseding indictment

charging Brown and Oliver with the following offenses: Conspiracy to Commit Robbery Affecting Commerce, in violation of 18 U.S.C. § 1951(a) (Count One); Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts Two and Four); and Attempted Robbery Affecting Commerce, in violation of 18 U.S.C. § 1951(a) and 2 (Count Three).

Prior to trial, Oliver filed a motion to sever his case from Brown's case, which was denied on April 28, 2011. (ECF No. 40.) Brown and Oliver also filed motions requesting that the district court dismiss the second § 924(c) charge on double jeopardy grounds. At a hearing on the motion held on September 6, 2011, the district court denied the motions. (ECF No. 91.) On August 26, 2011, Oliver filed a second motion to sever his case from Brown's case. That motion, like the first, was denied by the district court. (*Id.*)

A joint jury trial commenced on September 12, 2011. Oliver was represented by Craig W. Sampson ("Sampson").[1] At the close of the Government's evidence, defendants Brown and Oliver moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion. On September 14, 2011, the jury found both defendants guilty as charged in the superseding indictment.

The district court ordered preparation of a presentence investigation report ("PSR") for each defendant. The probation officer assigned to the case determined that Oliver's offense level was 28, and his criminal history category was VI, which yielded an advisory guideline range of 168-210 months' imprisonment for Counts One and Three. With respect to Count Two, Oliver faced a mandatory minimum of 120 months' incarceration; on Count Four, Oliver faced a mandatory minimum of 300 months' incarceration. On January 19, 2012, the district court sentenced Oliver to approximately 52 years of imprisonment (210 months' imprisonment concurrent on counts one and three; 120 months' imprisonment consecutive on count two, and

---

[1] This Court issued an Order granting the Government's Motion for an Order Compelling an Affidavit from Defense Counsel. (*See* ECF No. 169.) Sampson's affidavit is attached to the Government's response as Attachment C.

300 months' imprisonment consecutive on count 4).

On January 25, 2012, Oliver filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit.[2] On March 8, 2013, the Fourth Circuit affirmed Oliver's conviction and dismissed the appeal of his sentence. *United States v. Winston Oliver and Warren Brown*, 513 F. App'x 311, 2013 WL 856704 (4th Cir. Mar. 8, 2013). Thereafter, Oliver filed a writ of certiorari to the United States Supreme Court. On April 29, 2013, Oliver's petition was denied.

On September 23, 2013, Oliver filed the instant § 2255 Motion. In his § 2255 Motion, Oliver alleges eight grounds for relief:

| | |
|---|---|
| Ground One: | Ineffective assistance of counsel because counsel deprived Oliver of the right to testify |
| Ground Two: | Counsel was ineffective for failing to file notice of an alibi defense[3] |
| Ground Three: | Ineffective assistance of counsel for counsel's failure to raise the defense of entrapment during trial |
| Ground Four: | The trial court erred in admitting unreliable hearsay statements during trial |
| Ground Five: | Statements by the prosecutor during closing argument were improper and in violation of *United States v. Bruton* |
| Ground Six: | The Government improperly charged Oliver with two counts in violation of 18 U.S.C. § 924(c) |
| Ground Seven: | Oliver's due process rights were violated because the Government allowed false testimony from an expert witness |
| Ground Eight: | The Government failed to disclose *Brady* material for witness Kelvin Johnson |

The United States filed a response in opposition on December 16, 2013,[4] and Oliver

---

[2] On appeal, Oliver was represented by Christopher Collins ("Collins").
[3] Oliver combines Grounds One and Two, as well as Grounds Seven and Eight in his Motion. (*See* Mot. at 5.) However, for ease of understanding these grounds will be discussed separately.
[4] The Court granted the United States' request for an extension of time to file its response. (*See* ECF No. 169.)

4

subsequently filed a reply on January 3, 2014.[5] The issue is now ripe for decision.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court should generously interpret Oliver's factual allegations and legal contentions.

## III. DISCUSSION

### a. *Grounds One Through Three*

As an initial matter, because Oliver's first three grounds for relief are premised on ineffective assistance of counsel, the Court will first outline the general law surrounding this issue. To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing

---

[5] Oliver also filed two "supplemental memorandums" in support of his § 2255 Motion. (ECF Nos. 178, 196).

professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

(1) <u>Ground One: Ineffective Assistance of Counsel–Deprived Oliver of the Right to Testify</u>

In support of his first ground for relief, Oliver argues that he was deprived his right to testify in his own defense. However, as the Government asserts, a review of the evidence illustrates that Oliver was not "deprived of his right;" rather, Oliver *chose* not to testify on his own behalf.

As many courts have noted before, "[a] criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial." *United States v. Rashaad*, 249 F. App'x 972, 972 (4th Cir. 2007) (citing *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003)). A defendant may choose to waive this right, and that waiver must be made voluntarily and knowingly. *Id.* at 973 (citations omitted).

At the close of the Government's evidence, Sampson noted that "[his] understanding from speaking with Mr. Oliver is that he [Oliver] does not intend to testify." (Trial Tr. Vol. II 329:9–11.) However, to ensure that Oliver's rights were preserved, Sampson requested the Court to question Oliver regarding his intent to testify. (*Id.* at 329:11–13.) The Court indulged the

6

request, and thereafter advised Oliver of his "absolute right to remain silent and not take the stand and testify [on his] behalf" or his right "to take the stand and testify." (*Id.* at 330:13–16.) Oliver then responded that he wanted to testify, and noted that Sampson had previously explained all of the ramifications of such a decision. (*Id.* at 330:18, 21–23.)

After Oliver noted his intention to testify, the United States requested the Court admonish Oliver that, pursuant to the discovery order in the case, Oliver had not provided the United States with notice of an alibi, hence Oliver would not be able to testify that he was anywhere other than Mr. Fuel or the Howard Johnson's parking lot on the night of the alleged attempted robbery. (*Id.* at 330:25–331:9.) The Court so advised, telling Oliver that "[i]f you get on the stand, you cannot put on an alibi." (*Id.* at 331:12.) The Court further heeded Sampson's request and advised Oliver of "exactly what things he may be waiving if he testifies." (*Id.* at 331:22–333:3.) Ultimately, Oliver did not testify. (*Id.* at 336:13) (Sampson indicating he had no evidence to present).

In his affidavit, Sampson notes that when he met with Oliver on August 12, 2011 they discussed Oliver's right to testify during trial. (Sampson Aff. at ¶ 4.) Sampson specifically advised Oliver of the risks associated with testifying, including the likelihood of receiving an increase in his offense level for obstruction of justice if the Court believed Oliver gave false or misleading testimony during trial. (*Id.*) Sampson also wrote a letter to Oliver dated August 15, 2011, wherein he memorialized such conversation. (*Id.* Ex. 1.) Moreover, Sampson's affidavit states that Sampson and Oliver discussed the possibility of Oliver testifying on more than one occasion during his representation.

In light of the foregoing, it is apparent that Oliver was not *prevented* from testifying. Instead, after discussing his right to take the stand with his attorney and being advised of his rights by this Court, Oliver *chose* not to testify. Therefore, Oliver's first ground for relief is without merit.

//

(2) Ground Two: Ineffective Assistance of Counsel–Failure to File Alibi Defense

With regards to his second ground for relief, Oliver argues that counsel was ineffective for failing to file an alibi defense. Specifically, Oliver contends that the government had not submitted any evidence to refute his allegation that he was not present at Mr. Fuel or involved in the robbery. He claims that although his counsel did not file an alibi defense, "he still stated clearly on the record that [Oliver] could claim [he] was not w[h]ere the government said [he] was." (§ 2255 Mot. at 5.)

The discovery order entered in Oliver's criminal case on March 21, 2011 stated,

> It is further ORDERED pursuant to Fed. R. Crim. P. 12.1 that, no later than 20 calendar days before trial, the defendant, by and through counsel, shall comply with Rule 12.1(a) if the defendant intends to offer a defense of alibi, and further that the defendant and the government shall comply with Rules 12.1(b) and (c) within the time period set out in those rules, except upon motion of the parties and for good cause shown.

(ECF No. 22.) Rule 12.1 of the Federal Rules of Criminal Procedure requires a defendant to notify the Government of any intended alibi defense. The defendant must specify the place where the defendant claims to have been at the time of the alleged offense and also the name, address, and telephone number of each alibi witness on whom the defendant intends to rely. Fed. R. Crim. P. 12(a)(2).

Sampson asserts that he reviewed a statement Oliver allegedly gave to the police after he was arrested. (Sampson Aff. ¶ 3.) In that statement, Oliver claimed that he was at a "number of places" around the time of the alleged robbery, but Oliver never admitted to robbing Mr. Fuel. (*Id.*) On August 12, 2011, Sampson met with Oliver at the Central Virginia Regional Jail. (*Id.*) They discussed whether or not Oliver would be asserting as an alibi that on May 8, 2010, Oliver drove alone to Fredericksburg, Virginia to look for his daughter. (*Id.*) Oliver informed Sampson that there were no witnesses to corroborate this trip. (*Id.*) Oliver told Sampson that he did not want Sampson to file a notice of alibi at that time because he wanted to review other evidence in the case. (*Id.*) Sampson advised Oliver that pursuant to the discovery order, a notice of alibi was

due in ten days (August 22, 2010), hence Sampson would need to know before that date whether Oliver wished to assert this alibi. (*Id.*) Sampson documented this conversation in a letter dated August 15, 2011. (*Id.* at Ex. 1.) Oliver never instructed Sampson to file a notice of alibi.

With these facts in mind, the Court finds Oliver's second ground for relief unavailing. Oliver admitted that no witnesses were in a position to corroborate his alibi. (Sampson Aff. ¶ 3.) As a result, Sampson's performance was reasonable as he could not further investigate Oliver's alleged defense nor determine the reliability of the story. *See United States v. Roane*, 378 F.3d 382, 410 (4th Cir. 2004) (quoting *Strickland*, 466 U.S. at 691) ("[T]he strategic decision of [defendant's] lawyer on the extent of his investigation into the alibi defense 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"). Moreover, Oliver specifically instructed Sampson not to file a notice of alibi until he obtained further evidence and Oliver subsequently never altered that instruction. (*Id.*) For those reasons, the Court rejects Oliver's second ground for relief.

(3) Ground Three: Ineffective Assistance of Counsel–Failure to Raise Affirmative Defense of Entrapment

Third, Oliver argues that his counsel was ineffective for failure to raise the affirmative defense of entrapment. Specifically, Oliver claims that the government induced Oliver's criminal activity by asking him to get involved in their investigation, help find the gun, and "set up" Brown.

Entrapment is an affirmative defense which requires the defendant to prove by more than a scintilla of evidence two related elements: "(1) government inducement to commit a crime and (2) the lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004) (citing *Mathews v. United States*, 485 U.S. 58, 62–63 (1988)). The first element, "inducement," necessitates "government overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *Id.* (citations and internal quotation marks omitted). In other words,

9

"[t]he defense of entrapment is not applicable where one is induced to engage in criminal activity by a private citizen acting alone." *United States v. Barnett*, 197 F.3d 138, 143 (5th Cir. 1999). Secondly, the element of "predisposition" refers to "the defendant's state of mind before government agents make any suggestion that he shall commit a crime." *Hsu*, 364 F.3d at 198 (citation and internal quotation marks omitted).

In his affidavit, Sampson asserts that after a review of the discovery materials and the evidence presented at trial, he did not believe that asserting an entrapment defense was a valid argument. (Sampson Aff. ¶ 5.) Rather, Sampson believed that Oliver "voluntarily engaged in the conversations with law enforcement about the location of the firearm used in the robbery." (*Id.*) As noted in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. For those reasons, the Court denies Oliver's third ground for relief.

### b. *Grounds Four Through Eight*

As to the remaining grounds for relief, the Government argues each is barred by the doctrine of procedural default. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' [citations omitted], or that he is 'actually innocent,' [citations omitted]." *Bousley v. United States*, 523 U.S. 614, 622 (1998). This "procedural-default rule . . . is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).[6] Because Oliver failed to raise these remaining claims on appeal[7] or these claims were raised and rejected on appeal, they would be barred by procedural default. Moreover, Oliver cannot prove "cause" and "actual prejudice" or "actual innocence" for

---

[6] The procedural default rule does not apply to Oliver's first three claims of ineffective assistance of counsel, regardless of whether Oliver could have raised these claims on direct appeal. *Massaro*, 538 U.S. at 504.

[7] On appeal, Oliver asserted: (1) the district court abused its discretion in denying Oliver's motion to sever his trial from Brown's, and (2) the district court erred in denying the defendants' joint motion to dismiss one of the two § 924(c) charges. *United States v. Oliver*, 513 F. App'x 311 (4th Cir. 2013).

the following reasons.

(4) Ground Four: Admission of Alleged Hearsay Statement

With regards to Oliver's fourth ground for relief, Oliver alleges that the trial court admitted unreliable and "unconfronted" hearsay statements. He specifically challenges those statements listed in Appendix B attached to his § 2255 Motion. In response, the Government argues that (1) the challenged statement was not offered for the truth of the matter asserted and (2) Oliver's claim is barred by procedural default. A review of the trial transcript confirms the Government's account.

On direct examination of Detective Marshall M. Ellett ("Ellett"), the Government questioned Ellett regarding the release of information regarding the crime on CrimeStoppers. (*See* Trial Tr. Vol. I 109.) The Government then asked Ellett whether he received "any lead on a suspect or suspects in this crime." (*Id.* at 109:25–110:1.) Sampson objected to the introduction of this evidence. But the Government proffered that the evidence "goes to show what action [Ellett] took next." (*Id.* at 110:7–8.) After a sidebar, the Court overruled Sampson's objection. (*Id.* at 110:17.)

Hearsay is an out of court statement offered in court "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "However, 'an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken.'" *United States v. Galloway*, 459 F. App'x 232, 233–34 (4th Cir. 2011) (quoting *United States v. Love*, 767 F.2d 1052 (4th Cir. 1985)). Because the statement in the instant case was introduced to show what action Ellett took next, the district court did not err in admitting the testimony as non-hearsay. *See Galloway*, 459 F. App'x at 233–34.

(5) Ground Five: Improper Statements During Closing Arguments in Violation of *Bruton*

Besides being barred by procedural default, Oliver's fifth ground for relief fails to show either cause or prejudice as well. In *Bruton v. United States*, 391 U.S. 123, 135–36 (1968), the United States Supreme Court held "where a nontestifying codefendant's confession implicates

11

the defendant, a jury instruction is inadequate as a matter of law to protect the defendant's Confrontation Clause rights." *United States v. Locklear*, 24 F.3d 641, 645 (4th Cir. 1994). The Supreme Court subsequently expounded on this holding, finding that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a prior limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *see also United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999). If the confession is not facially incriminating, but only incriminating when linked with evidence introduced later at trial, then the Sixth Amendment is not violated. *Richardson*, 481 U.S. at 208; *see also Locklear*, 24 F.3d at 646 ("A *Bruton* problem exists only to the extent that the codefendant's statement in question, on its face, implicates the defendant.").

Here, prior to trial Brown confessed his role in the attempted robbery, and the Government advised counsel for the defendants that the Government intended to introduce the confession into evidence, while redacting the identity of Oliver whenever his name was mentioned. At a motions hearing held on September 6, 2011, Sampson argued that because there are only two suspects, it would be "patently obvious" that Brown's statement implicated Oliver. (Mot. Hr'g Tr. 34:11–14.) Sampson argued that the "appropriate response here" is to sever the defendants' trial. (*Id.* at 34:19–20.) The Court, however, disagreed. (*Id.* at 53:6–14.) Instead the Court found that any *Bruton* issue could be resolved by redaction. (*Id.* at 53:8–10.) The Court deferred judgment on the final appropriate redaction until trial. (*See id.* at 53:10–16.)

On the first day of trial, the Court again addressed the redaction issue. Sampson reiterated his objection, stating that "any reference to any accomplice by Mr. Brown would violate *Bruton*." (Trial Tr. Vol. I. 3:2–3.) Sampson requested the Court to "excise out any mention of an assistant or an accomplice and simply stick with what Mr. Brown admitted that he did." (*Id.* at 3:4–6.) But, recognizing that the Court may disagree, Sampson suggested using the term "driver" instead of "getaway driver," as Sampson argued the pronoun "has less of a

subjective suggestions as to what [Oliver] was doing." (*Id.* at 3:12–13.) The Court ultimately decided to the use "the driver." (*Id.* at 3:25.)

In its closing argument, the Government used this redaction in arguing,

> We also know from Brown's statement that on the date of the robbery, Brown told the driver of the vehicle that he was in that he was having financial problems. The driver told Brown to get into his truck and eventually the pair ended up at the Howard Johnson's parking lot, next-door to Mr. Fuel.

(Trial Tr. Vol. II 344:20–25.)

Based on the foregoing, Oliver's Sixth Amendment rights were not violated. The Court properly required the redaction of Brown's confession, thus eliminating any reference to Oliver and instead only referring to him as "the driver." *See Richardson*, 481 U.S. at 211. This statement was not facially incriminating and therefore no *Bruton* problem existed. *Id.* at 208; *see also Locklear*, 24 F.3d at 646. For those reasons, the Court rejects Oliver's fifth ground for relief.

(6) <u>Ground Six: Two Counts of § 924(c)</u>

Next Oliver argues that the Government improperly charged him with violating two counts of 18 U.S.C. § 924(c). Oliver previously raised this same claim before both this Court, (*see* Mot. Hr'g Tr. 31:4–33:4; 52:24–53:5), and the Fourth Circuit Court of Appeals, 513 F. App'x at 314–15. Therefore he is barred from relitigating this claim "under the guise of collateral attack." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *see also Roane*, 378 F.3d at 396 n.7 ("Because the defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues.")

(7) <u>Ground Seven: False Testimony From Government's "Expert" Witness</u>

The Government called Task Force Officer Timothy Walker ("Walker") during its case-in-chief. (*See* Trial Tr. Vol. I 130.) Walker testified that he spoke with Oliver "between May 10th and [Oliver's] arrest on May 21st, 2010. (*Id.* at 139:14–17.) However, "[a]fter 9:36 p.m. on May

13

8th, 2010, through the time that [Oliver] was arrested," (*id.* at 139:18–19), Oliver never contacted Walker with any information about the attempted robbery at Mr. Fuel, (*id.* at 139:22–23). In fact, Walker further testified that he never spoke directly to Oliver about the attempted robbery at all. (*Id.* at 142:6–9.) Rather, Walker contacted Oliver on May 20th upon Detective Ellett's request to speak with Oliver regarding the attempted robbery. (*Id.* at 140:23–141:2–3, 7–9.)

Oliver now argues that his due process rights were violated because the government allowed alleged false testimony from its "expert" witness Walker. Specifically, Oliver contends that contrary to Walker's testimony, he and Walker spoke about the robbery. In support of his argument, Oliver attaches a portion of the May 20, 2010 interview that was conducted by Detective Ellett. (§ 2255 Mot. App'x D.) Although Oliver attempts to highlight what he believes are relevant sections of the interview, the interview transcript fails to demonstrate that Walker lied on the stand. Walker is not even cited in the transcript. Thus, besides being procedurally barred, this argument is without merit as well.

### (8) Ground Eight: The Government Failed to Disclose *Brady* material for Witness Kelvin Johnson

The Supreme Court in *Brady* held that "Due Process requires that the Government disclose to the accused any favorable evidence in its possession that is material to guilt or punishment." *United States v. Beckford*, 962 F. Supp. 780, 785 (E.D. Va. 1997) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). Favorable evidence is any "evidence tending to exculpate the accused, but also any evidence adversely affecting the credibility of the Government's witnesses." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150 (1972)). Examples of evidence affecting the credibility of government witnesses include "plea agreements, promises of leniency by the Government, inducements to testify, and financial assistance offered by the Government. *Id.* at 786.

Here, Oliver contends that the Government failed to disclose requested impeachment evidence pursuant to *Brady*, specifically evidence that showed that witness Kelvin Johnson

("Johnson") was receiving relief on his pending state charges in exchange for testifying at Oliver's trial. However, Oliver's argument is, as the Government asserts, factually incorrect.

The Government notes that it learned, prior to the instant trial, that Johnson was facing narcotics charges in Caroline County, Virginia. At Johnson's request, the Government agreed to inform the Caroline County Commonwealth's Attorney, Anthony Spencer ("Spencer"), of Johnson's cooperation in the Brown/Oliver prosecution. However, the Government also informed Johnson that any consideration for Johnson on his Caroline County charges, based on his cooperation in the federal case, would have to be determined by the Caroline County Commonwealth's Attorney. The Government's argument is corroborated by the email sent from Assistant United States Attorney Roderick C. Young to Spencer on August 26, 2011. (Gov'ts Resp. Attachment G.) The Government submits that it disclosed this information to Oliver prior to trial in accordance with the Court's Discovery Order. (Gov'ts Resp. at 27.)

At trial, the Government questioned Johnson regarding his pending state charges and also asked if Johnson was "ever made any promises about [his] charges in Caroline County." (Trial Tr. Vol. II 253:15–21.) Johnson answered in the negative. (*Id.* at 253:22.) Oliver claims that Johnson lied regarding relief promised in exchange for his testimony. However, the email to Spencer clearly shows that the Government did not make any promises to Johnson; rather, the Government clearly informed Johnson that any consideration for relief on his pending state charges would have to be assessed by Spencer. (*See* Gov'ts Resp. Attachment G.) Additionally, Sampson did in fact cross-examine Johnson on his pending charges. (Trial Tr. Vol. II 264:2–4.) And although Sampson tried to infer that there was a "possibility that [testifying] may go to [Oliver's] benefit," (*id.* at 264:9–12), the Government never made any promises to Johnson, (*id.* at 264:5–8.) Thus, in sum, Oliver's final ground for relief also fails.

## IV. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A

15

certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Oliver is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

```
_____/s/_____
James R. Spencer
Senior U. S. District Judge
```

ENTERED this   20th   day of April 2015.